## Williamson v. Morris.

(Decided October 15, 1915.)

### Appeal from Pike Circuit Court.

1. Fraudulent Conveyances—Section 1906, Kentucky Statutes.—Under Section 1906, Kentucky Statutes, a conveyance actually fraudulent is void as to subsequent purchasers for value just as it is as to pre-existing creditors; and under the provisions of Section 1907a, Kentucky Statutes, a creditor may subject real estate of the defendant to the payment of his claim without a return of "no property" or the levy of an attachment thereon.

2. Fraudulent Conveyances—Husband and Wife.—Where a husband conveys his undivided interest in land to his wife, she at the time holding the other undivided interest, for the purpose of defrauding his creditors, she will be deemed to have been privy to his fraudulent intent.

J. S. CLINE for appellant.

J. J. MOORE and R. H. COOPER for appellee.

OPINION OF THE COURT BY JUDGE TURNER.—Reversing.

In August, 1900, W. T. Charles and wife conveyed to K. B. Morris and Matilda Morris, his wife, jointly, a tract of land in Pike County and they continued to be the owners thereof until September, 1909, when K. B. Morris conveyed his interest in the land to his wife, the appellee, Matilda Morris. Prior to that time, however, and in 1907, K. B. Morris sold to appellant Tilden Williamson eleven walnut trees on the tract of land and received the money therefor.

After the conveyance of September, 1909, to his wife, and in about 1910 or 1911, K. B. Morris cut and sold the eleven walnut trees sold to Williamson in 1907 and received the money therefor. About the 1st of January, 1913, appellant Williamson instituted an action in the Pike Quarterly Court against K. B. Morris for the value of the trees so appropriated by him, and on or about the

twenty-second of January, 1913, recovered in that court
a judgment against him on that account for $75.00 and
his costs. An execution thereon was issued from the
quarterly court and returned no property found, where-
upon appellant secured a transcript, filed the same in
the office of the circuit clerk, and had issued therefrom
another execution which was levied on the land as the
property of K. B. Morris. A sale was had of the Morris
land under this execution and appellant became the pur-
chaser at the amount of his debt, interest and cost which
was less than two-thirds of the appraised value.

While the deed of September, 1909, from K. B. Morris
to his wife is shown by the evidence to have been executed
by him and delivered to her at the time it bears date, it
was not lodged for record or recorded until the 21st day
of January, 1913, a short time after the institution of the
suit by Williamson against K. B. Morris and only one
day before he recovered a judgment in that action.

This is an equitable action by Matilda Morris against
Williamson and the sheriff to cancel and set aside the
execution sale and to enjoin the sheriff from making
Williamson a deed thereunder, and to quiet her title to the
land as against any claim of Williamson.

Williamson made his answer in the action a counter-
claim against the plaintiff, and prayed that the deed of
1909 from K. B. Morris to his wife be declared fraudulent
and that said land be subjected to the payment of his
debt.

The lower court in its judgment set aside the execu-
tion sale and quieted the title of the plaintiff against any
claim of Williamson by reason thereof, and Williamson
has appealed.

It is unnecessary to determine for the purposes of
this case whether Williamson was at the time of the
conveyance in September, 1909, from K. B. Morris to his
wife an existing creditor of Morris, although he at the
time owned the eleven walnut trees which were standing
on the land but which were not actually appropriated
by Morris until after the conveyance; for, a conveyance
actually fraudulent is void as to subsequent purchasers
for value just as it is as to pre-existing creditors.

Every fact and circumstance in the record show that
there was a fraudulent intent upon the part of Morris
when he made the conveyance to his wife to defraud his
creditors; he was at the time only forty-four years of

age and a reasonably active man; no reason is shown why he should suddenly have conveyed his property to his wife except that he had made some timber contracts which he feared would get him in trouble, and the evidence of at least two or three witnesses shows that he had in mind the design to defeat future obligations which he feared would come upon him by reason of the existing timber contracts. The deed to his wife recites a consideration of $5.00, and love and affection, and there is no pretense that she paid anything more than this for the land.

The evidence is that since that conveyance he has continued to manage and control the farm just as he did before, and that they have actually received since that time something like $5,000 from the sale of timber off of this land, a large part of which was paid to K. B. Morris himself.

While K. B. Morris may not have had it in his mind at the time of the conveyance in September, 1909, to his wife to defraud appellant by appropriating his timber, yet it is apparent from the evidence that he at that time had it in mind and made the conveyance with a fraudulent design to avoid the payment of obligations which he feared would come upon him under existing contracts.

Section 1906, Carroll's 1915 Edition, Kentucky Statutes, provides:

"Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to delay, hinder or defraud creditors, purchasers or other persons, and every bond, or other evidence of debt given, action commenced, or judgment suffered, with like intent, shall be void, as against such creditors, purchasers and other persons."

This act has been held to apply where the conveyance has been made with a fraudulent design to defraud subsequent purchasers and creditors, as well as pre-existing credtors.

Section 1907a of the same statute provides:

"That hereafter in this Commonwealth it shall be lawful for any party who may be aggrieved thereby when any real property has been fraudulently conveyed, transferred or mortgaged, to file, in a court having jurisdiction of the subject matter, a petition in equity against the parties to such fraudulent transfer or conveyance or mortgage, or their representatives or heirs, alleging

therein the facts showing their right of action and alleging such fraud, or the facts constituting it, and describing such property, and when done a *lis pendens* shall be created upon the property so described, and said suit shall progress and be determined as other suits in equity, and as though it had been brought on a return of *nulla bona,* as has heretofore been required."

Prior to the enactment of this last statute in 1896, it was held that a return of "no property" or an attachment was necessary before a creditor might subject real estate to his demand; but under its provisions he may now acquire a *lis pendens* in the manner there indicated.

Under the circumstances of this case the wife will be deemed to have been a privy to the fraudulent intent of her husband and will be bound thereby.

It is apparent that appellant acquired a lien on the one-half undivided interest of K. B. Morris in the land which he was entitled to have enforced under his counterclaim.

The judgment is reversed with directions to enter a judgment as herein indicated.